UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIELLE B.,[1]

                  Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

DECISION & ORDER

19-CV-0996MWP

**PRELIMINARY STATEMENT**

       Plaintiff Danielle B. brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income Benefits ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 18).

       Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 12, 16). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

**DISCUSSION**

**I.     Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     The ALJ's Decision

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 29, 2016, the application date. (Tr. 45-56).[2] At step two, the ALJ concluded that plaintiff had the severe impairments of rheumatoid arthritis, anxiety disorder, depressive disorder, PTSD, panic disorder, cervicalgia, cervical radiculopathy, migraine headaches, obesity, amnesia, and chondromalacia patella disease of undersurface of patella. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (*Id.*).

The ALJ concluded that plaintiff retained the RFC to perform light work with certain limitations. (*Id.*). Specifically, the ALJ found that plaintiff could frequently finger, handle and feel bilaterally, and could occasionally balance, stoop, kneel, crouch, crawl, push and pull bilaterally, and climb ramps, stairs, ladders, ropes and scaffolds. (*Id.*). The ALJ further concluded that plaintiff was unable to perform team or tandem work, but could perform a low stress job involving simple routine work, simple workplace decisions not at production rate pace,

---

[2] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

4

minimal changes in the workplace processes and settings, and occasional interaction with others. (*Id.*). At steps four and five, the ALJ determined that plaintiff was unable to perform any past relevant work, but based on plaintiff's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that plaintiff could perform, such as dry cleaning presser, laundry aide, document preparer, final assembler, lens inserter, surveillance system monitor, and checker I – warehouse. (*Id.*). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

### III. Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that she was not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 12-1, 17). Plaintiff challenges the ALJ's mental RFC determination on the grounds that it is not supported by substantial evidence because the ALJ improperly evaluated the medical opinions contained in the record. (Docket ## 12-1 at 16-27; 17 at 1-3). Specifically, plaintiff contends that the ALJ improperly gave more weight to the opinion of non-examining state consultant C. Walker ("Walker"), Ph.D., than she did to the opinion rendered by examining state consultant Janine Ippolito ("Ippolito"), Psy.D. (*Id.*). Next, plaintiff argues that the ALJ failed to properly evaluate her subjective complaints. (Docket ## 12-1 at 27-30; 17 at 3-4).

### IV. Analysis

#### A. The ALJ's Mental RFC Assessment

I turn first to the plaintiff's challenge to the ALJ's mental RFC assessment. Plaintiff maintains that the ALJ improperly weighed the opinions of Walker and Ippolito – the

two medical opinions assessing her mental functioning contained in the record.  (Docket ## 12-1 at 16-27; 17 at 1-3).  According to plaintiff, the ALJ improperly elevated the opinion of Walker, who never examined plaintiff, over the opinion of Ippolito, who conducted an in-person evaluation of plaintiff.  (*Id.*).  This error was harmful, plaintiff contends, because it led the ALJ to improperly reject the marked stress limitation assessed by Ippolito.  (*Id.*).

Ippolito, who evaluated plaintiff on July 14, 2016, opined that plaintiff had no limitations in her ability to follow and understand simple directions and instructions, perform simple and complex tasks independently, maintain attention and concentration, learn new tasks, and make appropriate decisions.  (Tr. 307).  She further opined that plaintiff was moderately limited in her ability to maintain a regular schedule and relate adequately with others and markedly limited in her ability to deal with stress.  (*Id.*).  The ALJ gave this determination "partial weight," reasoning that the record supported her findings except for "the marked limitations dealing with stress and no limitations engaging in complex tasks."  (Tr. 53).  With respect to plaintiff's ability to engage in complex tasks, the ALJ noted that "[t]he mental status examination revealed impaired memory skills indicating that [plaintiff] is not able to engage in complex tasks."  (*Id.*).  Regarding the stress limitations, the ALJ reasoned that the treatment records demonstrated that plaintiff was "'stable' despite taking care of six children and an ill mother[,] showing she has skills to deal with stress in an effective manner."  (Tr. 53-54).

Walker reviewed the available medical records, including Ippolito's evaluation, and rendered an opinion concerning plaintiff's mental functioning on August 9, 2016.  (Tr. 124-38).  According to Walker, plaintiff had no limitations in her ability to remember locations and work-like procedures; understand, remember and carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual

6

within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions, ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, set realistic goals or make plans independently of others. (Tr. 134-36). Walker opined that plaintiff suffered from moderate limitations in her ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. (*Id.*). Walker concluded that Ippolito's assessment that plaintiff suffered from marked limitations in stress was inconsistent with the record evidence, but opined that she did suffer from an adaptation limitation that would not preclude plaintiff from coping with minor workplace changes. (*Id.*).

Although plaintiff challenges the ALJ's basis for discounting Ippolito's opinion and her determination to give greater weight to Walker's opinion, I find that any error in the ALJ's weighing of the opinion evidence – even if one could be found to have been committed – was harmless because it would not have changed the outcome of the ALJ's decision. Accordingly, remand is not warranted on this ground.

"Irrespective of the terminology used by the ALJ, whether it be 'great weight,' 'little weight,' 'some weight,' or 'no weight,' the relevant inquiry is whether the ALJ in fact

7

incorporates or accounts for the limitations assessed by the medical professional in the RFC." *See Mathews v. Comm'r of Soc. Sec.*, 2020 WL 4352620, *8 n.10 (W.D.N.Y. 2020). Although the ALJ assigned only "partial weight" to Ippolito's opinion and disagreed that plaintiff's stress limitations were marked, the RFC formulated by the ALJ is entirely consistent with and incorporates many aspects of Ippolito's opinion. Indeed, the only assessed limitation that plaintiff maintains was not accounted for was the marked limitation in dealing with stress – a limitation which plaintiff characterizes as "disabling." (Docket # 17-1 at 20).

Contrary to plaintiff's contention, "[m]arked limitations in mental functioning, including a marked limitation in ability to deal with stress, do not mandate a finding of disability." *Uplinger v. Berryhill*, 2019 WL 4673437, *7 (W.D.N.Y. 2019). Rather, such limitations may be addressed through restrictions in plaintiff's RFC, *id.*, precisely as the ALJ did in formulating plaintiff's RFC. In her decision, the ALJ limited plaintiff to a low stress job involving simple routine work and simple workplace decisions not at a production rate pace. (Tr. 50). She also limited plaintiff's required interaction with others by precluding work involving tandem or team work and limiting plaintiff to jobs that required only occasional interaction with supervisors, coworkers and the public. (*Id.*). These limitations are entirely consistent with Ippolito's assessment as they adequately accommodate a marked limitation in appropriately dealing with stress. *See Martin v. Saul*, 2020 WL 5096057, *5 (W.D.N.Y. 2020) (ALJ accounted for marked limitations managing stress by limiting plaintiff to low stress work involving simple decisions, no production rate pace, few workplace changes, and only occasional contact with others); *Rice v. Comm'r of Soc. Sec.*, 2020 WL 4283894, *4 (W.D.N.Y. 2020) (ALJ accounted for moderate-to-marked limitations appropriately dealing with stress by limiting plaintiff to simple work in a low stress environment involving simple routine decisions,

occasional contact with others, and no production-rate pace); *Blocker v. Saul*, 2020 WL 1047737, *6 (W.D.N.Y. 2020) ("the ALJ accounted for [p]laintiff's stress limitations by incorporating into [p]laintiff's RFC limitations to 'simple routine tasks,' 'occasional interaction with coworkers and the general public,' and 'low stress work defined as work involving only occasional decision making'[;] . . . [s]uch limitations have routinely been found to adequately account for a marked limitation in dealing with stress"); *Swanson v. Comm'r of Soc. Sec.*, 2020 WL 362928, *4 (W.D.N.Y. 2020) ("the RFC limits [p]laintiff to work in a 'low-stress environment, which is defined as an environment with no supervisory duties, no independent decision-making required, no strict production quotas and minimal changes in work routine and processes[;] . . . [t]his limitation adequately accounts for [consultant opinion] that [p]laintiff was markedly limited in dealing with stress"); *Uplinger v. Berryhill*, 2019 WL 4673437 at *7 ("the ALJ appropriately incorporated marked limitations in dealing with stress . . . into plaintiff's RFC by limiting plaintiff to work in a low stress work environment reflected by simple instructions and tasks, with no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes and limiting her to frequent interaction with supervisors and occasional interaction with coworkers and the general public"). Accordingly, any error by the ALJ in weighing the medical opinions was harmless and remand is not warranted on this ground. *See Meyers v. Saul*, 2020 WL 5544333, *3 (W.D.N.Y. 2020) (where RFC accounted for limitations assessed by consultant, "any error by the ALJ in discounting [consulting opinion] would not have changed the outcome of the ALJ's disability determination").

    To the extent plaintiff maintains that the opinions of Ippolito and Walker were inadequate to support the ALJ's mental RFC assessment (Docket # 12-1 at 18-19, 25), I disagree.

9

Although the opinions were rendered in the summer of 2016 and plaintiff continued to receive ongoing mental health treatment through the time of the ALJ's opinion in 2018, "the mere passage of time does not render an opinion stale; instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Beckles v. Comm'r of Soc. Sec.*, 2019 WL 4140936, *6 (W.D.N.Y. 2019) (internal quotations and brackets omitted); *see George v. Comm'r of Soc. Sec.*, 2020 WL 1161016, *3 (W.D.N.Y. 2020) ("while the mere passage of time does not render an opinion stale, significant developments in an individual's medical history after the examination might") (quotations and brackets omitted).  Plaintiff has failed to identify – and the Court's own review does not suggest – any significant developments in her mental treatment history postdating the consulting opinions that would render them unreliable.[3]

        I similarly reject any contention that the ALJ was not entitled to rely on consulting opinions in formulating the RFC.  (Docket # 12-1 at 25).  Although some courts have noted that under certain circumstances the opinion of a non-examining physician alone may be insufficient to support an RFC assessment, *see*, *e.g.*, *Majdandzic v. Comm'r of Soc. Sec.*, 2018 WL 5112273, *6 (W.D.N.Y. 2018) ("[d]istrict [c]ourts in this Circuit have stated, as a general proposition, that while reports from nonexamining consultants are entitled to some evidentiary weight, they cannot constitute substantial evidence"), those circumstances are not present in this case.  Rather, the ALJ's decision makes clear that the mental RFC was based upon a review of the entire record, including both Walker's and Ippolito's opinions, plaintiff's subjective

---

[3] Plaintiff claims that she is contending, not that Walker's opinion is "stale," but that it was based upon an "incomplete record" because Walker was unable to review approximately two years of her mental health treatment notes. (Docket # 17).  Whether characterized as "stale" or based upon an "incomplete record," the inquiry is the same – whether the subsequent treatment history presents a basis upon which to conclude that the opinion is no longer one upon which the ALJ should rely.  As stated above, neither the plaintiff nor the Court has identified anything in plaintiff's subsequent treatment history that calls into question the continued validity of Walker's opinion.

complaints, and medical records documenting the "situational" nature of plaintiff's mental health symptoms and the stabilization of those symptoms with ongoing treatment. (Tr. 53-54). *See Majdandzic v. Comm'r of Soc. Sec.*, 2018 WL 5112273 at *6 ("as explained above, the ALJ did not rely on [the non-examining physician's opinion] as sole support for her RFC determination[;] . . . [t]he ALJ also evaluated [the examining physician's opinion], and incorporated many of her findings into the RFC assessment, and she considered the medical evidence and [plaintiff's] testimony and credibility"); *see also Camille v. Colvin*, 652 F. App'x 25 (2d Cir. 2016) (summary order) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[t]he regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record")); *Maleski v. Comm'r of Soc. Sec.*, 2020 WL 210064, *4 (W.D.N.Y. 2020) ("[i]t is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability[;] . . . [t]he opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record"); *Rose o/b/o X.G.T.A. v. Berryhill*, 2019 WL 2453352, *3 (S.D.N.Y.) ("when supported by evidence in the record, the opinion of a nonexamining physician can also constitute substantial evidence"), *report and recommendation adopted by*, 2019 WL 2498279 (S.D.N.Y. 2019); *Cheatham v. Comm'r of Soc. Sec.*, 2018 WL 5809937, *6 (W.D.N.Y. 2018) ("[n]on-examining medical consultants . . . may provide opinions which constitute substantial evidence"); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018) ("[u]nder the regulations, the ALJ was permitted to consider the opinion [of the non-examining physician] in making a disability determination[;] . . .

[m]oreover, the opinion of a non-examining medical expert . . . may be considered substantial evidence if consistent with the record as a whole").

### B. The ALJ's Assessment of Plaintiff's Subjective Complaints

I turn next to plaintiff's contention that the ALJ improperly discounted her subjective complaints by mischaracterizing her treatment as conservative and overemphasizing her activities of daily living. (Docket ## 12-1 at 27-30; 17 at 3). For the reasons explained below, plaintiff's challenge is without merit.

An evaluation of subjective complaints should reflect a two-step analysis. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether the evidence reflects that the claimant has a medically-determinable impairment or impairments that could produce the relevant symptoms. *See id.* Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]." *Id.* The relevant factors for the ALJ to weigh include:

> (1) [the claimant's] daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [his or her] pain or other symptoms . . . ; and (7) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)).

The ALJ concluded that plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 51).

In doing so, the ALJ assessed plaintiff's subjective complaints in the context of the entire record. I disagree with plaintiff's contention that the ALJ mischaracterized or overemphasized evidence in reaching her determination.

      Plaintiff's challenge largely rests on her disagreement with the ALJ's characterization of the record evidence, specifically, the conservative nature of her treatment and her ability to engage in activities of daily living. (Docket # 12-1 at 27-30). Contrary to plaintiff's contention, the ALJ applied the proper legal standards in analyzing plaintiff's subjective complaints, and substantial evidence supports the ALJ's determination that plaintiff's complaints were not consistent with the record evidence for the reasons she stated. *See Luther v. Colvin*, 2013 WL 3816540, *7 (W.D.N.Y. 2013) (ALJ properly assessed subjective complaints where she "reviewed all of [p]laintiff's subjective complaints . . . [and] properly considered [p]laintiff's activities of daily living, inconsistent testimony and how her symptoms affected her attempts at maintaining a job"). In her decision, the ALJ recounted much of plaintiff's physical and mental health treatment history, including her general improvement with treatment and ability to manage her symptoms through medication. (Tr. 51-53). Although plaintiff's MRI findings demonstrated evidence of disc herniations, her physical examinations demonstrated minimal associated functional limitations, and she testified that she controlled her pain through the use of Aleve. (Tr. 53). With respect to plaintiff's mental health, the ALJ noted that the treatment records demonstrated that plaintiff's symptoms largely stabilized with treatment and medication management, although she continued to experience situational life stressors. (Tr. 52-54). The ALJ further noted that plaintiff's testimony and the medical records demonstrated that, despite complaints of disabling symptoms, she was able to engage in significant activities of daily living, including "paying bills, driving her six children to various

activities, taking care of her ill mother, shopping, cooking and going to multiple appointments." (Tr. 53). Although plaintiff contends that the ALJ found that plaintiff "was capable of more than she really was," plaintiff has failed to identify a single misstatement by the ALJ. (Docket # 12-1 at 29). Rather, plaintiff maintains that the ALJ overstated her capabilities because her testimony demonstrates that she needed assistance from her children to complete many of these activities. The ALJ explicitly acknowledged in her decision, however, that plaintiff's children assisted with some household chores, including shopping and laundry. (Tr. 51). I do not find that the ALJ overlooked material evidence or mischaracterized the record evidence regarding the conservative nature of plaintiff's treatment or her ability to engage in activities of daily living.

In sum, plaintiff's challenge amounts to a disagreement with the ALJ's consideration of conflicting evidence. "[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support her position." *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, \*6 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 7238947 (N.D.N.Y. 2016). Rather, she must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Id.*; *see also Avant v. Colvin*, 2016 WL 5799080, \*3 (W.D.N.Y. 2016) ("[a]ll of [p]laintiff's arguments focus on the substantiality of the evidence supporting the ALJ's decision[;] [h]owever, as the Second Circuit has explained, 'whether there is substantial evidence supporting the claimant's views is not the question . . . , rather, the [c]ourt must decide whether substantial evidence supports the ALJ's decision'") (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (brackets omitted)). The ALJ's decision in this case demonstrates that she weighed the record evidence, including the conflicting evidence; no basis exists for this Court to overturn the

ALJ's assessment of the evidence or her resolution of the conflicts in it. *See Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, *9 (N.D.N.Y. 2015) ("[i]t is the province of the [ALJ] to consider and resolve conflicts in the evidence as long as the decision rests upon adequate findings supported by evidence having rational probative force[;] . . . [the ALJ] properly considered the totality of the record evidence, and concluded that the evidence quoted above outweighed [plaintiff's] evidence to the contrary") (internal quotation omitted).

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 16)** is **GRANTED**. Plaintiff's motion for judgment on the pleadings **(Docket # 12)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                          *s/Marian W. Payson*
                                        MARIAN W. PAYSON
                                      United States Magistrate Judge

Dated: Rochester, New York
        February 26, 2021